IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY**, a Delaware corporation, and **FORD GLOBAL TECHNOLOGIES, LLC**, a Delaware Limited Liability Company,<br><br>   Plaintiffs,<br><br>v.<br><br>**AIRPRO DIAGNOSTICS, LLC**, a Florida Limited Liability Company,<br><br>   Defendant. | Civil Action No.:<br><br>Honorable: |

GREGORY D. PHILLIPS (P80801)
JARED L. CHERRY (P80800)
**PHILLIPS RYTHER & WINCHESTER**
4001 South 700 East, Suite 500
Salt Lake City, Utah 84107
Tel: (801) 935-4932
Fax: (801) 935-4936
Attorneys for Plaintiffs

## **COMPLAINT**

Plaintiffs Ford Motor Company and Ford Global Technologies, LLC

("FGTL" and collectively "Ford") for their claims against defendant AirPro

Diagnostics, LLC ("AirPro" or "APD") allege as follows:

## NATURE AND SUBSTANCE OF THE ACTION

1.     Ford files this complaint against AirPro for trademark infringement, false designation of origin, unfair and deceptive trade practices in violation of Michigan statutory and common law, copyright infringement, and breach of contract based upon AirPro's misappropriation of Ford's world-famous FORD OVAL® trademark and violation of Ford's rights in its diagnostic software programs, Integrated Diagnostic System ("IDS") and the Ford J2534 Diagnostic Software ("FJDS").

2.     IDS is a vehicle diagnostic software created and sold by Ford to provide complete dealership-level vehicle diagnostic coverage for Ford vehicles. IDS interfaces with Ford vehicles using VCM, VCM II, VCMM and VMM devices created and sold by Ford.

3.     FJDS is a vehicle diagnostic software created and sold by Ford to provide complete dealership-level vehicle diagnostic coverage for Ford vehicles using J2534-compatible Vehicle Communications Interfaces (VCI).

4.     IDS and FJDS provide module programming for Ford vehicles.

5.     AirPro has used IDS and/or FJDS in connection with its business of providing remote scanning and calibration services.

2

6.      AirPro's use of IDS and/or FJDS violates the end-user license agreement ("EULA") governing the use of these programs.

7.      AirPro reproduces Ford's IDS and FJDS software without a valid license, and such reproduction violates Ford's copyrights in the IDS and/or FJDS software.

8.      AirPro uses Ford's world-famous FORD OVAL® trademark to advertise and promote AirPro's remote scanning and calibration services.

9.      An example showing AirPro's use of Ford's world-famous FORD OVAL® trademark is attached hereto as Exhibit A.

10.     AirPro uses Ford's world-famous FORD OVAL® trademark to inaccurately represent to the public that AirPro's products include "OEM [i.e., Ford] Scan Tool Software Applications resident directly on the AirPro tool."[1]

11.     Contrary to AirPro's claim that "OEM Scan Tool Software" is "resident directly on the AirPro Tool" and AirPro's use of the FORD OVAL® trademark, AirPro has specifically argued that it does *not* use Ford's genuine software (*i.e.*, IDS or FJDS) to diagnose issues with Ford vehicles.

---

[1] See Exhibit A; also available at https://airprodiagnostics.com/difference-airpro-astech/.

3

12.     Rather, AirPro uses AutoEnginuity's Giotto product to perform diagnostic scans of Ford vehicles.

13.     AirPro's use of the FORD OVAL® trademark and false claims that AirPro uses "OEM Scan Tool Software" constitute passing off of AutoEnginuity's Giotto product for Ford's genuine IDS and FJDS software.

14.     AirPro has further represented to Ford that AirPro has acquired retail versions of Ford's FJDS to perform vehicle module programming; however, AirPro's use of Ford's FJDS software violates the applicable End User License Agreements ("EULA").

15.     Ford seeks damages, statutory damages, injunctive relief, Ford's attorneys' fees and costs, and other appropriate relief.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over the claims relating to the Copyright Act (17 U.S.C. §§ 101, 501) and the Lanham Act (15 U.S.C. §§ 1125 et. seq.) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction) and 28 U.S.C. § 1338(a) (any act of Congress relating to copyrights, patents and trademarks).

4

17.     This Court also has subject matter jurisdiction over the related state law claims under 28 U.S.C. § 1367 (action asserting a state claim of unfair competition joined with a substantial and related federal claim under the patent, copyright or trademark laws).

18.     This action arises out of wrongful acts committed by AirPro that are intentionally targeted at Ford in this District that subject AirPro to personal jurisdiction here.

19.     AirPro has made more than 100 separate purchases of Ford's IDS or FJDS Software since July 10, 2017.  A listing of the purchases made by AirPro is attached hereto as Exhibit B.

20.     Each purchase shown in Exhibit B was processed on behalf of Ford by Helm, Inc.'s servers located in Michigan.

21.     AirPro's acquisition, activation, and use of Ford's IDS or FJDS Software are actions purposefully directed at this jurisdiction in furtherance of the tortious conduct alleged herein, including AirPro's unauthorized reproduction of Ford's copyrighted materials and violations of Ford's copyrights in the IDS and FJDS Software.

22. AirPro markets, sells, furnishes, and supports the accused infringing products containing or utilizing unauthorized copies of Ford's IDS or FJDS Software throughout the United States, including in the State of Michigan.

23. The Equipment and Tools Institute ("ETI") is a Michigan-based trade association with its principal place of business located in Farmington Hills, Michigan.

24. ETI gathers diagnostic information from various original equipment manufacturers, including Ford, and makes such information available to manufacturers of diagnostic tools, via ETI's TEK-NET Library for inclusion in diagnostic tools manufactured by ETI members.

25. An entity identified as "AirPro Diagnostic" is a member of ETI. A copy of the listing of "ETI Member Companies," including "AirPro," is attached hereto as Exhibit C.

26. At least six individuals associated with "AirPro Diagnostics" are identified as "active participants" in ETI. Exhibit D.

27. By virtue of "AirPro Diagnostic's" membership in ETI, AirPro obtains information relating to Ford vehicles from ETI's TEK NET Library and related to the products at issue in this lawsuit.

6

28.     "AirPro Diagnostic's" membership and active participation in ETI are actions purposefully directly at this jurisdiction and are directly relevant to the wrongful conduct at issue in this lawsuit because the information made available by Ford through ETI's TEK-NET Library is related to the development of the products at issue in this lawsuit.

29.     AirPro's membership and participation in ETI are actions purposefully directly at this jurisdiction and are directly relevant to the wrongful conduct at issue in this lawsuit because the information made available by Ford through ETI's TEK-NET Library is used in the development of the products at issue in this lawsuit

30.     Venue is proper in this judicial district under 28 U.S.C. § 1391.

## THE PARTIES

31.     Ford Motor Company is a Delaware corporation with its principal place of business in Dearborn, Michigan.

32.     FGTL is a Delaware limited liability company with its principal place of business in Dearborn, Michigan, and is a wholly-owned subsidiary of Ford Motor Company.

7

33.     AirPro is a Florida Limited Liability Company having a principal

place of business at 11737 Central Parkway, Jacksonville, FL 32224.

### FACTS COMMON TO ALL CLAIMS

34.     Ford is one of the world's largest producers of cars and trucks.

35.     Ford was incorporated in Delaware in 1919, after acquiring the

business of a Michigan company, also known as Ford Motor Company, which was

incorporated in 1903 to produce and sell automobiles designed and engineered by

Henry Ford.

36.     In addition to producing, leasing, and selling cars and trucks, Ford

also provides retail customers with a wide range of after-sale vehicle services and

products through its dealer networks and other channels, including automotive

repair.

**A.      Ford has Expended Great Effort and Expense Developing the
Ford Marks.**

37.     FORD® and the FORD OVAL® are some of the most well-known

and highly regarded trademarks in the world.  Ford sold its first automobile at least

as early as 1903, and has sold automobiles and many other goods and services

under the world-famous FORD® and FORD OVAL® trademarks for more than a century.

38.     Ford holds numerous registrations for FORD® and the FORD OVAL® in the United States and worldwide.  Ford's registrations for FORD® and the FORD OVAL® are valid, unrevoked, subsisting, incontestable, and constitute *prima facie* evidence of Ford's exclusive ownership of  these trademarks.  FORD® and the FORD OVAL® trademarks are referred to hereinafter collectively as the "Ford Marks."

39.     Ford has spent billions of dollars and has expended significant effort in advertising, promoting, and developing the Ford Marks throughout the world. As a result of such advertising and expenditures, Ford has established considerable goodwill in the Ford Marks.  The Ford Marks have become widely known and recognized throughout the world as symbols of high quality automotive goods and services.

40.     The Ford Marks are world-famous and distinctive, and have become associated by the consuming public exclusively with Ford.  The Ford Marks are an invaluable asset of substantial and inestimable worth to Ford.

41.     Ford has registered the FORD® and FORD OVAL® trademarks in
the field of automobile repair and maintenance services.  Specific registrations
owned by Ford for the FORD® and FORD OVAL® trademarks related to
automobile repair and maintence services are listed below.

| Mark | Reg. No. | Int'l. Class | Goods and Services |
|---|---|---|---|
|  | 3,657,597 | 037 | Automobile repair and maintenance services. |
| FORD | 3,046,211 | 037 | Vehicle repair and maintenance services; emergency roadside services |

42.     Copies of the trademark registration certificates for the FORD
OVAL® Trademark (U.S. Reg. No. 3,657,597) and the FORD® Trademark (U.S.
Reg. No. 3,046,211) are attached hereto as Exhibit E.

**B.      AirPro's Internet Website and Advertising Misappropriate
Ford's Trademarks and Represent that Ford's Genuine Software
is Present on AirPro's Products and Used to Diagnose Vehicles.**

43.     AirPro used the FORD OVAL® mark on its website to promote
AirPro's goods and services.

10

44.     More specifically, AirPro's website includes multiple claims that AirPro's products include "OEM Scan Tool Software Applications resident directly on the AirPro Tool."[2]

45.     AirPro's website closely associates AirPro's claims that its products utilize "OEM Scan Tool Software Applications" with the FORD OVAL® trademark, as shown in Exhibit A.

46.     AirPro's website also included a "Sampling of OEM Subscriptions," showing an invoice for Ford's FJDS software, as shown in Exhibit F.

47.     AirPro's website makes repeated claims about OEM software, including software from Ford, being "resident" on AirPro's tool.  Such claims include the following examples:

- AirPro's home page prominently claiming: "Customized OEM Remote Scanning & Calibration Solutions," as shown below.

---

[2] Exhibit A; also available at https://airprodiagnostics.com/difference-airpro-astech/.



- Claiming on the "What is AirPro" page, as shown below: "AirPro delivers OEM programming for most replacement control modules including; air bag control, occupant detection, object detection, electronic steering control, body control, engine control, powertrain control, transmission control and more."



- Describing AirPro's product as an "OEM compliant scan-tool." *See* Exhibit G, at Page 1.

- Claiming AirPro's products include "Live OEM Software "Resident" Capable of Utilizing OEM Approved SAE J-2534." *See* Exhibit G, at Page 1.

- Describing "The AirPro Comprehensive Solution" as including **"Scan Tool and OEM Software 'Resident' at the Vehicle"** and showing FORD

OVAL® closely associated with an image labeled "Sampling of OEM Subscriptions." *See* Exhibit G, at Pages 9-10.

48.     AirPro's website differentiates AirPro's products from competitor's products by claiming that its products are "OEM compliant." *See* Exhibit G, at Page 1.

49.     AirPro's use of Ford's trademarks in support of its claims that its products are "OEM compliant" is likely to cause consumers to erroneously believe that Ford authorizes, sponsors, or endorses AirPro's products and/or services.

50.     Ford has not authorized AirPro to use Ford's trademarks to promote AirPro's products.

51.     Ford has not "validated as OEM compliant"[3] any product of AirPro.

**C.     AirPro has Violated Ford's Copyrights and the EULA Governing Use of Ford's IDS and/or FJDS Software.**

---

[3] *See* Exhibit G, at Page 9 (contrasting AirPro's product with a competitor's product and noting that the competitor's product is "**NOT** validated as OEM compliant." This claim, which immediately precedes the "Sampling of OEM Subscriptions," including an invoice from Ford, falsely suggests that AirPro's products are "validated as OEM Compliant" by the manufacturers shown in the graphic that immediately follows AirPro's claim, including Ford).

14

52.     Ford has invested tremendous effort and expense in creating and developing the IDS and FJDS Software for the purpose of diagnosing and facilitating the service and repair of Ford vehicles.

53.     The United States Copyright Office has issued copyright registration certificate TX 8-840-242 for the work titled "Ford J2534 Diagnostic Software (FJDS) Version 113." A copy of the registration certificate is attached as Exhibit J.

54.     A copy of the EULA governing retail purchases of Ford's IDS Software, such as those purchased by AirPro, is attached hereto as Exhibit H.

55.     The terms of the EULA attached hereto as Exhibit H must be accepted by users prior to installation and use of Ford's IDS Software.

56.     A copy of the EULA governing retail purchases of Ford's FJDS Software, such as those purchased by AirPro, is attached hereto as Exhibit I.

57.     The terms of the EULA attached hereto as Exhibit I must be accepted by users prior to installation and use of Ford's FJDS Software.

58.     AirPro has purchased and activated at least 115 separate retail purchases of Ford's IDS or FJDS Software.  *See* Exhibit B.

59.     AirPro has represented to Ford that it purchased the retail licenses listed in Exhibit B only to reprogram vehicle modules, and that AirPro has *not* used

15

Ford's IDS or FJDS software as a "scan tool software application"[4] to diagnose

Ford vehicles.

60.     The EULA for IDS and FJDS each include the following terms:

- "YOU may install and use this Product only for Your internal use on Your premises for the direct repair of a vehicle and for no other purpose."

    o   Exhibits H and I at Section 1(a).

- "Neither this Agreement nor any rights granted hereunder, in whole or in part shall be assignable or otherwise transferable by YOU. Nothing in this Agreement grants to YOU the right to assign, sell, lease, loan or otherwise transfer Product in whole or in part to a third party."

    o   Exhibits H and I at Section 9.

61.     AirPro has installed and used the IDS or FJDS Software at facilities

throughout the world, via the Internet and on behalf of AirPro's customers.

62.     AirPro's use of the IDS or FJDS Software at facilities throughout the

world, via the Internet, and on behalf of AirPro's customers does *not* constitute

AirPro's "internal use on [AirPro's] premises for the direct repair of a vehicle," as

required by the EULAs for IDS and FJDS.  Exhibits H and I at Section 1(a).

---

[4] Contrary to the representations made to Ford that AirPro's products do *not* use Ford's genuine IDS or FJDS software for diagnostic scanning, AirPro's website continues to claim that AirPro's products utilize "OEM Scan Tool Software Applications."

63.     AirPro's use of the IDS or FJDS Software at facilities throughout the world, via the Internet, and on behalf of AirPro's customers does *not* constitute the "direct repair of a vehicle."

64.     AirPro "assign[s], sell[s], lease[s], loan[s] or otherwise transfer[s]" the IDS or FJDS Software to AirPro's customers because AirPro's customers receive the benefit of using Ford's IDS or FJDS Software without purchasing the software.

65.     AirPro "assign[s], sell[s], lease[s], loan[s] or otherwise transfer[s]" the IDS or FJDS Software to AirPro's customers because AirPro receives payment from its customers, at least in part, to obtain access to Ford's IDS or FJDS Software without incurring the cost of purchasing the software.

66.     AirPro has specifically conceded that it transferred the retail licenses it purchased from one customer to another in a letter dated September 18, 2019, which states:

> APD purchased multiple short-term licenses (two-day term) and only one long term license of the Ford software. APD would use the licensed software on one AirPro scan tool (a computer) at a time (as permitted). It would then release the license from that scan tool when finished until the next use was needed on another AirPro scan tool.

Exhibit K, at Page 2.

17

67.     The acts described in paragraphs 61 through 66 of this Complaint constitute violations of the EULA.

68.     In view of the above-described violations of the applicable EULA, AirPro infringed Ford's copyrights by copying the IDS and FJDS Software and installing the IDS and FJDS Software on multiple AirPro scan tools.

69.     It is well established that "when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement."  3 Nimmer, NIMMER ON COPYRIGHT § 10.14[A][2] (citing cases).

## FIRST CLAIM FOR RELIEF
(Federal Trademark Infringement under 15 U.S.C. § 1114)

70.     The allegations set forth above are incorporated herein by this reference.

71.     The Ford Marks are inherently distinctive, are arbitrary and fanciful, and have acquired secondary meaning.  The public associates the Ford Marks exclusively with Ford and Ford's vehicles, products, and services.  This is a result of the inherent distinctiveness of the Ford Marks and of distinctiveness acquired through extensive advertising, sales, and use in commerce throughout the United

States and beyond in connection with products and services bearing or using the Ford Marks.

72.     Despite Ford's well-established rights in the Ford Marks, AirPro uses and continues to use, without Ford's authorization, spurious designations that are identical to, or substantially indistinguishable from the Ford Marks.

73.     AirPro has acted with knowledge of Ford's ownership of the Ford Marks and with deliberate intention, to unfairly benefit from the incalculable goodwill inherent in the Ford Marks.

74.     AirPro's misappropriation of the Ford Marks has been, and continues to be done with the intent to cause confusion and mistake, and to deceive consumers concerning the source and/or sponsorship of AirPro's products and services.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

75.     AirPro's misappropriation of the Ford Marks is likely to cause confusion in the marketplace and among purchasers of diagnostic tools.

76.     As a direct and proximate result of AirPro's conduct, Ford has suffered irreparable harm to the Ford Marks.  Unless AirPro is restrained from

19

further infringement of the Ford Marks, Ford will continue to be irreparably harmed.

77.     Ford has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if AirPro's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

78.     As a direct and proximate result of AirPro's conduct, Ford is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting and disgorgement, of all revenues and/or profits wrongfully derived by AirPro from its infringement of the Ford Marks, and Ford's attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF
(False Designation of Origin under 15 U.S.C. § 1125(a))

79.     The allegations set forth above are incorporated herein by this reference.

80.     AirPro has used and is continuing to use in commerce false and misleading designations of origin concerning AirPro's products and services and Ford's products and services.

81.     AirPro has sought to pass off its products as genuine Ford products by using the FORD OVAL® trademark and falsely claiming that its products utilize "OEM Scan Tool Software Applications."

82.     AirPro's false designations of origin have caused actual confusion and will continue to cause actual or likely confusion regarding the affiliation, connection, or association of AirPro's products and services with Ford or confusion as to the origin, sponsorship, or approval of AirPro's products and services.

83.     AirPro has caused and will continue to cause its false and misleading designations of origin and descriptions of fact to enter interstate commerce.

84.     Ford has been or is likely to be injured as a result of the false and misleading designations of origin and descriptions of fact, either by direct diversion of sales from itself to AirPro, or by a lessening of the goodwill associated with Ford's products and services.

85.     AirPro's acts constitute false designations of the origin and/or sponsorship in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

21

86.     By reason of AirPro's actions, Ford has suffered irreparable harm to the Ford Marks.  Unless AirPro is restrained from its actions, Ford will continue to be irreparably harmed.

87.     Ford has no remedy at law that will compensate for the continued and irreparable harm that will be caused if AirPro's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

88.     As a direct and proximate result of AirPro's conduct, Ford is entitled to damages, treble damages, statutory damages, and the equitable remedy of an accounting for and disgorgement of, all revenues and/or profits wrongfully derived by AirPro from its false designations of origins, and Ford's attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF
### (Unfair Competition under Michigan Law)

89.     The allegations set forth above are incorporated herein by this reference.

90.     AirPro simulated the Ford Marks and substituted AirPro's products and services for those of Ford, thereby deceiving and misleading the public.

22

91.     AirPro's actions as described above constitute unfair competition as a matter of Michigan common law.

92.     As a result of AirPro's conduct, Ford will continue to suffer damage to Ford's reputation and loss of business because of consumer confusion as to the origin, sponsorship, approval, nature, characteristics, or qualities of AirPro's products and services.

93.     Ford has been, and absent injunctive relief will continue to be, irreparably harmed by AirPro's actions.

94.     Ford has no adequate remedy at law for AirPro's unfair competition.

95.     Ford is entitled to damages in an amount to be proven at trial, as well as Ford's attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
(Violation of Michigan Uniform Trade Practices Act, M.C.L. § 445.903)

96.     The allegations set forth above are incorporated herein by this reference.

97.      AirPro's above-described acts constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, in

violation of Michigan's Uniform Trade Practices Act, M.C.L. § 445.903,

including, but not limited to:

> (a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, or approval of AirPro's products and services;
>
> (b) Using deceptive representations in connection with AirPro's products or services;
>
> (c) Representing that AirPro's products or services have sponsorship, approval, or characteristics they do not have, including Ford's sponsorship or approval;
>
> (d) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction; and
>
> (e) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

98.    Ford will continue to suffer damage as a result of AirPro's unfair, unconscionable, or deceptive methods, acts, or practices.

99.    Ford has been, and absent injunctive relief will continue to be, irreparably harmed by AirPro's actions.

24

100.    Ford has no adequate remedy at law for AirPro's violations of the Michigan Uniform Trade Practices Act.

101.    Ford is entitled to damages in an amount to be proven at trial as well as Ford's attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF
(Trademark Dilution)

102.    The FORD® and the FORD OVAL® trademarks are owned by Ford and are famous as defined by 15 U.S.C. § 1125(c)(2), in that each mark is widely recognized by the general consuming public as identifying goods or services having originated from Ford.

103.    AirPro's use and appropriation of the FORD® and the FORD OVAL® trademarks has caused and continues to cause harm to the distinctive quality of the FORD® and the FORD OVAL® trademarks by lessening the capacity of the marks to identify and distinguish Ford's goods and services from those of others.

104.    AirPro's actions constitute trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

25

105.    AirPro will continue, unless enjoined, to cause irreparable harm and injury to the goodwill and reputation of Ford.

106.    As a direct and proximate result of AirPro's wrongful acts, Ford has also suffered pecuniary damages in an amount to be determined at trial.

107.    On information and belief, AirPro willfully intended to trade on Ford's reputation and/or to cause dilution of Ford's famous marks.

108.    Ford is therefore entitled to an injunction, in addition to the remedies in sections 35(a) and 36 of the Lanham Act, including treble profits and/or damages, attorneys' fees, and costs.

## SIXTH CLAIM FOR RELIEF
### (Copyright Infringement under 17 U.S.C. §§ 101 et seq.)

109.    The allegations set forth above are incorporated herein by this reference.

110.    AirPro admits that it "purchased multiple short-term licenses (two-day term) and only one long term license" for Ford's FJDS Software and that it "would use the licensed software on one AirPro scan tool (a computer) at a time (as permitted). It would then release the license from that scan tool when finished until the next use was needed on another AirPro scan tool."  Exhibit K

26

111.   AirPro has intentionally and willfully copied Ford's FJDS Software on multiple AirPro scan tools in violation of the applicable terms of the EULA.

112.   AirPro's unauthorized copying of Ford's FJDS Software constitutes a violation U.S. Copyright TX 8-840-242.

113.   The EULA constitutes a license that is limited in scope.

114.   AirPro's use of Ford's FJDS Software outside of the limited scope granted in the EULA constitutes copyright infringement.

115.   Unless AirPro is enjoined, AirPro will continue to infringe upon Ford's copyrights.

116.   AirPro's copying has caused Ford to lose substantial revenues.

117.   As a direct result of such copyright infringement, Ford has sustained and will continue to sustain, substantial injury, loss, and damages to be proven at trial.

118.   Ford is entitled to a permanent injunction restraining AirPro, its officers, directors, agents, employees, representatives, and all persons acting in concert with them, from engaging in further acts of copyright infringement.

119.   Ford is further entitled to recover from AirPro the gains, profits, and advantages AirPro has obtained as a result of its acts of copyright infringement.

27

Ford is at present unable to ascertain the full extent of the gains, profits, and

advantages AirPro has obtained by reason of its acts of copyright infringement, but

Ford is informed and believes, and on that basis alleges, that AirPro obtained such

gains, profits, and advantages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
(Breach of Contract)

120.    The allegations set forth above are incorporated herein by this

reference.

121.    The terms of the EULA attached hereto as Exhibit H must be accepted

by users prior to installation and use of Ford's IDS Software.

122.    The terms of the EULA attached hereto as Exhibit I must be accepted

by users prior to installation and use of Ford's FJDS Software.

123.    AirPro has used the IDS or FJDS Software at numerous locations

throughout the world via the Internet in violation of the applicable EULA.

124.    AirPro uses the IDS or FJDS Software to provide remote diagnostic

services, and not in connection with the "direct repair of a vehicle."

125.    AirPro's uses  the IDS and FJDS Software to provide remote

diagnostic services violates the applicable EULA.

28

126.    AirPro "assign[s], sell[s], lease[s], loan[s] or otherwise transfer[s]" the IDS or FJDS Software to its customers in violation of the applicable EULA.

127.    As a direct and proximate result of  AirPro's breach of the EULA, AirPro has caused damage and will continue to cause damage to Ford in an amount to be proven at trial.

## **Prayer for Relief**

WHEREFORE, Ford prays for judgment against AirPro as follows:

1.    Under all claims for relief, that a preliminary and permanent injunction be issued enjoining AirPro, its employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

(a)    further infringing upon Ford's copyright, or printing, publishing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any products not authorized by Ford bearing any simulation, reproduction, copy, or colorable imitation of Ford's copyrighted materials;

29

(b)     imitating, copying, or making unauthorized use of the Ford Marks, including, but not limited to, using the name or marks FORD® and the FORD OVAL®, or any confusingly similar variations thereof, in any manner in the United States;

(c)     importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying in the United States any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of any or all of the Ford Marks;

(d)     using in the United States any simulation, reproduction, counterfeit, copy, or colorable imitation of the Ford Marks, or any confusingly similar variations thereof, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any product or service;

(e)     using in the United States any false designation of origin or false description (including, without limitation, any letters or symbols constituting the Ford Marks), or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed, or

30

sold by AirPro is in any manner associated or connected with Ford, or is sold, manufactured, licensed, sponsored, approved, or authorized by Ford;

(f)     transferring, consigning, selling, shipping, or otherwise moving in the United States any goods, packaging, or other materials in AirPro's possession, custody, or control bearing a design or mark substantially identical to any or all of the Ford Marks or violating Ford's copyrights;

(g)     engaging in any false advertising or other activity in the United States constituting unfair competition with Ford with respect to the Ford Marks or constituting an infringement of the Ford Marks, or of Ford's rights in, or to use or exploit, the Ford Marks; and

(h)     instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (g) above.

2.     For an order directing that AirPro recall and deliver for destruction all products, labels, tags, signs, prints, packages, videos, advertisements, and other materials in its possession or under its control, bearing or using the Ford Marks or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, pursuant to 15 U.S.C. § 1118.

3.     For an order directing AirPro to deliver for destruction all unauthorized products, labels, signs, transparencies, electronic files, photographs, images, and advertisements in AirPro's possession or under AirPro's control bearing Ford's copyrighted works or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, programs, or other means of making the same.

4.     For an order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold, or otherwise circulated or promoted by AirPro is authorized by Ford or related in any way to Ford's products or services.

5.     For an order requiring AirPro to pay Ford such damages as Ford has sustained as a consequence of AirPro's infringement of Ford's copyright and to account for all gains, profits, and advantages derived by AirPro by the infringement of Ford's copyright or as an alternative to recovering actual damages and any additional profits under the Copyright Act, ordering AirPro to pay Ford the statutory damages thereunder for Ford's copyrighted works infringed by AirPro.

32

6.    For an order awarding Ford for Ford's copyrighted works infringed by AirPro and an increased award of statutory damages for willful infringement pursuant to 17 U.S.C. § 504.

7.    For an order that Ford recover the costs of this action together with reasonable attorneys' fees, investigators' fees, and pre-judgment interest pursuant to 17 U.S.C. § 505.

8.    For an order directing that AirPro file with the Court and serve upon Ford's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which AirPro has complied with the above.

9.    For an order requiring AirPro to file with the Court and provide to Ford an equitable accounting and disgorgement of all revenues and/or profits wrongfully realized by AirPro.

10.    For an award of Ford's costs and disbursements incurred in this action, including Ford's reasonable attorney's fees, pursuant to 15 U.S.C. § 1117 and Michigan law, including M.C.L. § 445.911(2).

11.    For an award of actual damages pursuant to 15 U.S.C. § 1117, M.C.L. § 445.911(2), and M.C.L. § 445.1904.

33

12.    For an award of Ford's damages trebled or, alternatively, an award of AirPro's wrongful profits from the United States trebled, whichever is greater, plus Ford's costs and attorneys' fees, pursuant to 15 U.S.C. § 1117.

13.    In the alternative, for an award of statutory damages under 17 U.S.C. § 1117(c).

14.    For an award of interest, including pre-judgment interest, on the foregoing sums.

15.    For an order directing that this court retain jurisdiction of this action for the purpose of enabling Ford to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

16.    For such other and further relief as the Court may deem just and proper.

Dated:  February 27, 2020

                Respectfully submitted,

                GREGORY D. PHILLIPS
                JARED L. CHERRY
                **PHILLIPS RYTHER & WINCHESTER**
                4001 South 700 East, Suite 500
                Salt Lake City, Utah 84107
                Tel:  (801) 935-4935; Fax:  (801) 935-4936

                By:    /s/ Gregory D. Phillips
                      *Attorneys for Plaintiffs*