IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **FORD MOTOR COMPANY**, a Delaware corporation, and **FORD GLOBAL TECHNOLOGIES, LLC**, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>**AIRPRO DIAGNOSTICS, LLC,** a Florida Limited Liability Company,<br><br>Defendant. | Civil Action No. 2:20-cv-10518<br><br>Hon. George Caram Steeh |
| Gregory D. Phillips (P80801)<br>Jared L. Cherry (P80800)<br>PHILLIPS WINCHESTER<br>4001 South 700 East, Suite 500<br>Salt Lake City, Utah 84107<br>Tel: (801) 935-4932<br>Fax: (801) 935-4936<br>Attorneys for Plaintiffs | |

**REPLY IN SUPPORT OF FORD'S**

**MOTION FOR PROTECTIVE ORDER**

I.  **AirPro's Deposition Topics 1, 3, 5, 6, 9-15, and 16 Fail to Identify the Topics of Testimony with "Reasonable Particularity."**

AirPro does not dispute the well-established proposition that "a corporate representative deposition notice is overly broad if it purports to require testimony on topics beyond those identified," as articulated in authorities cited by Ford such as *Reed v. Bennett*, 193 F.R.D. 689 (D. Kan. 2000). ECF No. 39, PageID.591. Nor does AirPro dispute that it seeks testimony on deposition topics beyond the topics identified in its corporate deposition notice, namely, "additional OEM requirements, beyond the four examples given by AirPro in its notice. . . ." ECF No. 39, at PageID.591. Instead, without citing authority, AirPro simply argues that use of expansive language (*e.g.*, "including, but not limited to") and exhaustive language (*e.g.*, "all facts," "any and all claims") satisfies the "reasonable particularly" requirement set forth in Fed. R. Civ. P. 30(b)(6). It does not. AirPro's concession that its notice contemplates "additional OEM requirements" that are "beyond those identified" is fatal to AirPro's position.

AirPro's attack on the authority cited by Ford as "out of context sound bites from inapposite case law"[1] taken from a "series of out-of-state cases"[2] is similarly misplaced. Contrary to any argument made by AirPro, this Court has entered protective orders under nearly identical circumstances. For example, in *Sandler v.*

---

[1] ECF No. 39, PageID.588.
[2] ECF No. 39, PageID.590-591.

*I.C. System., Inc.*, 2014 WL 1846031 (E.D. Mich. 2014), this Court entered a protective order striking each of the following 30(b)(6) topics as overbroad:

> 11. Any and all information related to the factual basis for Corporate Defendant's Answer;
> 12. Any and all other information related to Corporate Defendant's defenses contained in the Answer;…
> 35. Any and all other information related to Plaintiff's claims against Corporate Defendant.

*Sandler v. I.C. System., Inc.*, Case No. 2:13-cv-1300, ECF No. 53-1. AirPro's Topics 9-15 parallel the above-quoted topics, which were held to be overbroad.

AirPro misrepresents Ford's position in asserting that Ford seeks to prevent all 30(b)(6) deposition testimony on various topics.[3] Its assertion is contradicted by extensive, written exchanges between Ford and AirPro in which Ford asks AirPro merely to define with reasonable particularly the topics on which it seeks testimony. Ford's position is succinctly summarized in the ruling of the Court in *In Re: Independent Service Organizations Antitrust Litigation,* 168 F.R.D. 651, 654 (D. Kan. 1996):

> Although we have no quarrel with CCS's contention that it has a right to discover the facts upon which Xerox will rely for its defense and counterclaims, CCS's attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable. It also implicates serious privilege concerns, and potential problems with confidential information under our earlier protective order. Even under the

---

[3] ECF No. 39, PageID.588 ("Indeed, granting Plaintiffs' request would relieve them from having to provide a corporate representative to answer even the most basic questions about the factual predicate for Plaintiffs' claims against AirPro and the harm that Plaintiffs claim to have suffered.")

3

>present-day liberal discovery rules, Xerox is not required to have counsel "marshal all of its factual proof" and prepare a witness to be able to testify on a given defense or counterclaim.

Contrary to AirPro's claims, Ford has never refused to provide testimony on any of the topics at issue that are identified with reasonable particularity. On the contrary, Ford has been asking AirPro for months[4] simply to identify the topics with "reasonable particularity" so that Ford is not left to guess at the information AirPro is seeking. Ford's only quarrel regards AirPro's attempt to rely on overly broad and open ended the topics that are the subject of the deposition.

AirPro cannot be excused from complying with the "reasonable particularity" requirement, notwithstanding its statements[5] in response to Ford's motion for protective order. Such an approach is a waste of the resources of the parties and the Court. Moreover, failing to define the scope of the deposition topics in advance will likely lead to disputes about the deposition's scope during

---

[4] *See e.g.*, ECF No. 36-3, PageID.572 (Ford's counsel noting on January 27, 2021, that AirPro failed to provide revised 30(b)(6) notices despite agreeing to do so during a call on January 21, 2021). Ford's counsel forwarded a draft copy of Ford's motion to counsel for AirPro on February 26, 2021 and noticed again that counsel for AirPro stated that "[they] intend[ed] to provide a revised notice."

[5] For example, AirPro represents that it "is certainly not attempting to turn the corporate representative depositions into any kind of memory test" (ECF No. 39, PageID.593-594) or seek "documents or testimony that would be covered by the attorney-client privilege or the work product doctrine" (ECF No. 39, PageID.594). AirPro's *post hoc* narrowing of its notices is not a basis to deny Ford's motion, and is a continuation of AirPro's pattern of refusing cooperation until Ford is forced to file a motion. ECF No. 42 at PageID.651.

the deposition, which will only further increase the costs and inconvenience for both parties. Thus, not only is AirPro's position contrary to law, but it also invites future disputes that can and should be avoided by simply defining the topics with reasonable particularity before the deposition begins.

## II. AirPro Fails to Identify Authority Supporting the Propriety of Its Attempted Reliance on the "Drunk Driver" Defense at Issue in Topics 5(iv) and 6.

AirPro concedes that its "why me" defense is not valid[6] and attempts to recast the defense as an unidentified "ambiguity" in Ford's EULA. AirPro's effort must be rejected because the distinction makes no difference. AirPro is seeking evidence that Ford has *not* asserted claims against other entities that may also infringe Ford's rights, and as such, AirPro asks—just like the drunk driver in Professor McCarthy's example—"why pick on me?"

AirPro argues that Ford's actions with regard to other entities "is relevant to the proper interpretation of the EULA that is at issue in this case." ECF No. 39 at PageID.595. AirPro's argument ignores the fact that Ford has produced records of all enforcement actions related to the EULA—a fact that AirPro concedes[7]—and Ford only objects to discovery related to <u>unasserted</u> claims that do <u>not</u> reflect on

---

[6] ECF No. 36-4 (Counsel for AirPro: "Also, I generally don't disagree with your statement about the impact of the existence of other infringers.").
[7] AirPro's opposition refers to "numerous non-privileged emails produced by Ford in this litigation that directly address these issues." ECF No. 39, PageID.594-595.

5

how Ford "applied the terms of its form licensing agreements." Ford's decisions concerning how and when to assert claims against entities that infringe Ford's rights, such as AirPro, reflect the strategies, mental impressions, and advice of Ford's counsel, and are, therefore, privileged.

### III. AirPro Concedes that Topic 16 is Improper but Refuses to Propose Specific Amendments.

AirPro's response to Ford's objections to Topic 16 exemplifies AirPro's refusal to cooperate with Ford to address discovery issues before those issues are raised with the Court. AirPro's argument that it "cannot [revise its own deposition topics] until a new date for the corporate representative depositions is chosen"[8] is absurd. AirPro fails to explain or provide authority supporting its contention that it is powerless to amend the topics, despite its repeated agreement to do so. AirPro's argument echoes its equally fallacious argument that its service of answers to Ford's discovery requests, long after they were due and after Ford was forced to file a motion to compel its answers, rendered Ford's motion to compel moot.[9]

While AirPro has offered generally to "eliminate claims that are arguably the subject of expert testimony," the only specific modification AirPro has been

---

[8] ECF No. 39, PageID.597.
[9] ECF No. 26, PageID.430 ("Plaintiffs' motion is largely moot. Plaintiffs filed their motion at 4:16 p.m. on February 12, 2021. Literally one minute later, at 4:17 p.m., counsel for Defendant, AirPro Diagnostics, LLC ("AirPro"), hit send on an email enclosing AirPro's response to Plaintiffs' second set of discovery requests").

willing to make is elimination of "the precise mathematical calculation for each damage claim." ECF No. 39, PageID.597. AirPro's proposal fails to address other areas of these topics that are the subject of expert testimony and that include the exhaustive and open-ended language at issue in other requests.

    **IV.    The Additional Information Provided by AirPro and Related to Mr. Johnson Does Not Provide a Defense to AirPro.**

AirPro's opposition reveals—for the first time—a video recording of Mr. Johnson participating in a panel discussion in which an AirPro executive also appears. According to AirPro, "Mr. Johnson's specific remarks on this issue begin at the 30:14 mark of the video and run through the 31:55 mark." ECF No. 39, PageID.604, n.4. Mr. Johnson's comments, however, do not negate or excuse AirPro's violations of Ford's intellectual property rights. As stated in Mr. Johnson's declaration, which AirPro does not address, "[he] did not suggest to AirPro that Ford consents to AirPro's unauthorized reproduction of copyrighted material in Ford's IDS, FJDS, or FDRS." ECF No. 36-5 at ¶ 6, PageID.576.

AirPro also asserts—without citation to any specific comment of Mr. Johnson—that "Mr. Johnson nevertheless expressed full support for aftermarket providers such as AirPro." ECF No. 39, PageID.605. Contrary to AirPro's claim, Mr. Johnson never expressed "support" for AirPro, and on the contrary, Ford had previously sent a cease and desist letter to AirPro. Mr. Johnson may have refrained from condemning AirPro's violations of Ford's rights in front of the

assembled audience, but his exercise of restraint is not equivalent to expressing "support" for AirPro.

Finally, the correspondence filed by AirPro under seal merely establishes that Mr. Johnson expressed certain opinions to members of his team, but as previously stated, he delegated and deferred on these issues to Mr. Dorony and Ms. Morse.  For this reason, Ford has repeatedly proposed that AirPro first depose Mr. Dorony and Ms. Morse, and then, if questions remain that can only be answered by Mr. Johnson, Ford will withdraw any objection to Mr. Johnson's deposition.  As noted in Ford's motion, this approach is common for high-level employees, such as Mr. Johnson.[10]

Dated:  April 15, 2021

        JARED L. CHERRY
        **PHILLIPS WINCHESTER**

By:  /s/ Jared L. Cherry
     *Attorney for Plaintiffs*

---

[10]  *See e.g., First Nat'l Mortgage Co. v. Fed. Realty Inv. Trust*, No. 03-02013, 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007) ("Courts generally do refuse to allow the immediate deposition of high-level 'apex deponent' executives, before the testimony of lower level employees with more intimate knowledge of the case has been secured.").

## Certificate of Service

I hereby certify that the foregoing was electronically filed using the CM/ECF system, which will serve this document upon all counsel of record above listed.

/s/ Jared L. Cherry